UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION



CASE NO: 98-8522-CIV-SEITZ/GARBER

INTEGRATED BROADCAST SERVICES,
INC., f/k/a BYLINE CORPORATION,
    a Florida corporation

    Plaintiff,

v.

PALO ALTO BROADCASTING CO.,
d/b/a SMARTS BROADCAST SYSTEMS,
JOHN F. SCHAD, JANICE L. SCHAD,
SCHAD BROADCAST ENTERPRISES,
INC., d/b/a SMARTS BROADCAST SYSTEMS,
CAMPBELL & COMPANY, CPA's, P.C., AND
JOHN CAMPBELL,

    Defendants,

v.

A.M. HOCHSTADT,

    Third Party Defendant.
_____/

## CAMPBELL DEFENDANTS' MEMORANDUM IN SUPPORT OF COMPENSATORY SANCTIONS

    Defendants, JOHN CAMPBELL and CAMPBELL & COMPANY, CPA's, P.C. (collectively "CAMPBELL"), hereby file their Memorandum in Support of Compensatory Damages to be entered against, the Plaintiff, INTERNATIONAL BROADCAST SERVICES, INC., ("IBS"), and its virtual representative, Third-Party Defendant, A.M. Hochstadt ("HOCHSTADT"), and in support thereof states:

*Integrated Broadcast Services v. Campbell, et al.*
CASE NO: 98-8522-CIV-SEITZ
Page 2

## I. INTRODUCTION

This Court has entered an Order Affirming Magistrate Judge Garber's Report and Recommendation Regarding Motions for Sanctions, Attorney's Fees, and Costs (the "Order"), on May 24, 2001. The Order concludes that Judge Garber was correct in imposing sanctions against IBS and Hochstadt, for their vexatious conduct during the course of this litigation. It further instructs the Defendants, John F. Schad, Janice L. Schad, Schad Broadcast Enterprises, Inc., and Palo Alto Broadcasting Company (the "Schad Defendants"), and the Campbell Defendants to direct further argument to Judge Garber detailing the suggested amount of compensatory sanctions to impose upon IBS and Hochstadt.

Furthermore, this Court has concluded that the factual background exists in which it is appropriate to sanction IBS and Hochstadt for their conduct. Based on the factual history accepted by the Court and contained herein, it is evident that a substantial amount of compensatory sanctions are required to punish for the past abuses, and prevent such future abuses of the court system.

Because of the excellent factual and legal rendition contained in the Schad Defendants' Memorandum of Law on Compensatory Sanction (the "Schad Memorandum"), reference is made, herein, to it and, specifically, the appendixes attached thereto. Additionally, the Schad Memorandum is adopted in its entirety herein.

## II. FACTUAL BACKGROUND

IBS sought damages against CAMPBELL and the remaining Defendants arising from the breach of an agreement dated March 23, 1993 (the "Agreement"), between A.M. Hochstadt and Defendant John Schad, the sole shareholder of Defendant, PALO ALTO BROADCASTING, INC. ("PALO ALTO"). IBS alleged negligence against CAMPBELL, PALO ALTO's accountant regarding an audit of PALO ALTO. IBS alleged that it was a third party beneficiary of this Agreement.

### Settlement of the Iowa Litigation

Prior to IBS' filing the instant action, Schad sued Hochstadt in Iowa for breach of the Agreement in October, 1995. (the "Iowa Litigation"). In the Iowa Litigation, Schad sought damages for breach of the Agreement, fraudulent practices and declaratory relief, essentially seeking the return of 100 shares of PALO ALTO stock conveyed to IBS pursuant to the Agreement. Hochstadt filed a Counterclaim in the Iowa litigation alleging Schad's breach of the Agreement, fraudulent misrepresentations, and abuse of process.

The Iowa Litigation was settled with Shad paying Hochstadt $10,000 over time in exchange for the return to SCHAD of the 100 PALO ALTO shares from IBS. Pursuant to the settlement, IBS conveyed the 100 shares transferred pursuant to the Agreement back to Schad and thus participated in and acquiesced to the settlement. As a part of the settlement, the parties exchanged mutual releases. The Release provided, in pertinent part:

> "The undersigned, A.M. Hochstadt, each being of legal age, hereby acknowledge payment to us of the sum of $1.00 in

> consideration of which payment we each do hereby release, acquit and forever discharge John Schad, <u>and all other persons, firms and corporations</u> from any and all liability whatsoever, including all claims, demands and causes of action of every nature affecting us or either of us jointly or severally, which we or either or us may have or ever claim to have by reason of:
>
> All claims or causes of action set forth in Law Number 22299 pending in Palo Alto County, Iowa and any other causes of action which in any way relate to the agreement signed by and between the parties on March 23, 1993."

Contemporaneous to the parties executing the Iowa Releases, Schad and Hochstadt executed a Mutual Release and Settlement Agreement (the "Settlement Agreement"). In the Settlement Agreement, the parties released each other from "any and all claims or causes of action set forth in Law Number 22299 pending in Palo Alto County, Iowa and any other causes of action which in any way relate to the agreement signed by and between the parties on March 23, 1993".

Despite this settlement, and the unambiguous language of the Iowa settlement documents, IBS brought the instant lawsuit arising out of the identical subject matter of the Iowa Litigation.[1] Discovery in this case ultimately revealed that Hochstadt controlled IBS and was the effective alter ego of the corporation, which had been dormant before entering

---

[1] Hochstadt originally brought this lawsuit in a predecessor action, Case No. 97-8197-CIV-FERUGSON, *pro se*, as assignee of IBS. Hochstadt signed the Complaint in the predecessor action. Although IBS filed an Amended Complaint, no Order ever authorized the substitution of parties. Hochstadt therefore remained the Plaintiff in that litigation further subjecting him to Rule 11 sanctions. The Plaintiff voluntarily dismissed the predecessor action without prejudice when it was unprepared for trial, and pursuant to agreement, later filed the instant identical action.

into the Agreement. Hochstadt was the President, majority stockholder and sole remaining director of IBS.

### Hochstadt's History of Bad Faith Litigation

In defending this action, the attorneys for CAMPBELL uncovered prior acts by Hochstadt in other lawsuits which significantly questioned his veracity, including allegations that Hochstadt's primary pursuit was creating and concocting litigation. As an example, the attorneys discovered the Cosmex litigation[2]. In Cosmex, the plaintiff corporation, ultimately determined to be controlled by Hochstadt, sued its insurance carrier, Lloyds of London, regarding an alleged loss arising out of a fire. During the litigation, Judge Phillip Cook determined that Hochstadt was the alter ego and controlled the plaintiff corporation and thus made Hochstadt a party to the lawsuit. After a trial was held, the jury found that the plaintiff had "intentionally set fire to the insured premises and that the plaintiff had intentionally inflated the value of its inventory in its claim with the insurance companies". Based on the jury's finding of fraud, Judge Cook subsequently entered an order finding that the plaintiff had instituted a frivolous lawsuit against Lloyds of London.

The order sanctioned Hochstadt, whom the court determined was responsible for the fraud, by ordering him to pay the opposing counsel's attorney's fees pursuant to Fla. Stat. §57.105. However, recently, on March 22, 2000, the Court's Order sanctioning

---

[2]*Cosmex International, Inc. v. Underwriters at Lloyd's of London, et. al.*, Case Number 88-00695 CA 32 pending in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida.

*Integrated Broadcast Services v. Campbell, et al.*
CASE NO: 98-8522-CIV-SEITZ
Page 6

Hochstadt was vacated by Judge Fredericka G. Smith. (A copy is attached to the Schad Memorandum as Appendix 6).

Judge Smith did not vacate or dispute the finding that Hochstadt had committed fraud. However, the court held that such fraud, in and of itself, was not the proper basis for requiring Hochstadt to pay the opposing parties' attorney's fees pursuant to Fla. Stat. §57.105. The court explained that: "Although it may seem unfair for a party found to be the victim of fraud to have to pay substantial attorney's fees to defend the claim against it, that is the system which prevails in Florida."

At a pre-trial conference held in March 1999, this Court directly warned Hochstadt that it was skeptical of his case and that the Plaintiff should make sure it had credible evidence before proceeding further. Despite this admonishment, Hochstadt perpetuated this frivolous lawsuit.

## The Frivolous Nature of IBS's Lawsuit

On or about February 8, 2000, this Court granted CAMPBELL's Motion for Summary Judgment based on the fact that the settlement of the Iowa Litigation had barred all of IBS' claims from the inception in light of the fact that Hochstadt was the virtual representative of IBS thus binding IBS to the Iowa Litigation settlement.

Aside from the threshold issue of the Iowa Releases, CAMPBELL's Motion for Summary Judgment also set forth various other grounds revealing the baseless nature of this litigation. Specifically, Plaintiff lacked credible evidence supporting its damage claims which were too speculative to present to the jury. The Plaintiff's claims hinged on

it being able to prove a series of contingencies, including the ability to raise money for and successfully complete a private placement, the success of its product and its ability to prove its lost profits. The Plaintiff claimed that it suffered $70 million in lost profits yet lacked any reliable facts showing that it would have made a profit, much less any basis to calculate the amount of the profit.

Specifically, IBS had not conducted any business or maintained a bank account for at least 10 years. IBS had never been in the business of leasing the subject "Smartcaster" or similar units. No one else was or is in the business of leasing smartcaster or similar units in any comparable way. PALO ALTO had never engaged in the business under the Hochstadt Leasing Plan or any other and knows of no one else who has. Having never leased any units under the Hochstadt Leasing Plan or any other plan, it would have been impossible for the jury to determine if any profit would have been earned. In short, the entire claim was frivolous.

Additionally, CAMPBELL noted that to the extent IBS had suffered any damages, it had failed to mitigate its damages in their entirety. IBS claimed that its damages all flowed from CAMPBELL's failure to determine the correct number of PALO ALTO shares. However, Hochstadt claimed that he was aware of the discrepancy in the number of PALO ALTO shares from the date of delivery of the 100 share certificate in April 1993 but neither he nor IBS ever took any action to determine the correct number of shares.[3] Henry Tegler,

---

[3]The correct *number* of shares was a red herring because, in fact, all of the shares of PALO ALTO had been transferred to Hochstadt. The only alleged discrepancy was between the number of shares listed in the Agreement and the

Jr. of World Invest, IBS' underwriter, testified that assuming that the share issue was the only problem, that he would have accepted a legal opinion as to the number of shares in PALO ALTO. IBS failed to even do that. Phillip Schwartz, Esq., CAMPBELL's expert, testified that such a problem could not have prevented the private placement from going forward. IBS failed to mitigate its damages in their entirety.

Further, CAMPBELL's motion for summary judgment noted that the Plaintiff had presented no evidence that CAMPBELL caused IBS' alleged damages. IBS' private placement could not have been completed regardless of the alleged "share issue". Tegler testified that World Invest, the underwriter, would not have completed the private placement if Schad would not have released any claims against Hochstadt for breach of the Agreement and otherwise agreed that Hochstadt had fully performed the Agreement.

Ultimately, the Eleventh Circuit Court of Appeals, approved the Court's rationale and upheld its ruling granting the Motion for Summary Judgment, without opinion on May 10, 2001 (DE 386).

### Hochstadt is Not the Average Pro Se Litigant

Hochstadt is far from the typical pro se litigant. He has substantial experience in filing lawsuits, as well as in discovery and motion practice. In the Iowa Litigation, Hochstadt estimated that he has "approximately fifteen thousand hours of experience in law..". During his extensive litigation experience, Hochstadt even had one of his lawsuits defeated on summary judgment under collateral estoppel principals because Hochstadt

---

number of shares outstanding at the time of the transfer to Hochstadt.

*Integrated Broadcast Services v. Campbell, et al.*
CASE NO: 98-8522-CIV-SEITZ
Page 9

was attempting to re-litigate in state court an action he had lost in federal bankruptcy court.[4] This is significant.

A review of Hochstadt's background confirms that he is a professional litigant. During the course of discovery, Hochstadt proudly produced and bragged about a typewritten list citing the thirty-two (32) cases to which he has been a party from 1988-1994. (A copy of the list is attached to the Shad Memorandum as Appendix 1.) The list reveals Hochstadt's litigious nature. In Palm Beach County only, Hochstadt has been involved in thirty-nine (39) lawsuits since 1990.

Hochstadt utilizes his knowledge of the court system and of the expense necessary to defend even a frivolous claim to extort money from defendants. He blatantly abuses the system, immune from bar supervision, as a means to harass and intimidate. Through this he hopes to make money. He has pursued this strategy for over 15 years with little repercussions. The result is that he continues to cause defendants to waste millions of dollars defending themselves. He also burdens an already over burdened court system. He does so without any real remorse or concern for the damage he causes and the impact his conduct has on his defendants or their business. Hochstadt's litigious experience, as well as his experience with the principals of collateral estoppel makes his bad faith, vexatious and hostile conduct in this case even more appalling.

---

[4]*A.M. Hochstadt v. Orange Broadcast, Inc.*, 588 So. 2d 251 (Fla. 3d DCA 1991).

### Bar Grievance

Additionally, during this litigation Hochstadt filed a bar grievance with the Florida Bar against W. Todd Boyd, attorney for Campbell. Hochstadt baselessly alleged that the Mr. Boyd violated ethical rules by informing this Court about the Cosmex litigation and the finding of fraud against Hochstadt. The Florida Bar denied Hochstadt's grievance. This is yet another example of Hochstadt's penchant for filing frivolous claims and attempting to improperly coerce and intimidate his opposition.

### Hochstadt Subpoenaed Counsel

Hochstadt's disregard or lack of concern as to the impact of his actions have most recently been exhibited by his attempt to depose Mr. Boyd. Hochstadt noticed the Mr. Boyd for deposition in a lawsuit he filed against John Conness, his former counsel in the Cosmex litigation. Hochstadt sued Conness for malpractice contending that he failed to properly represent Hochstadt's interest in the trial of that matter. Mr. Boyd explained to Hochstadt that there was no legitimate basis on which the deposition could go forward given that any information Mr. Boyd possessed was derived through my investigation of and defense of this matter and from an investigator, all of which would be privileged. Mr. Boyd told Mr. Hochstadt to please do research before dragging me to Palm Beach County. Mr. Hochstadt refused to release Mr. Boyd from the subpoena, thereby necessitating an appearance in Palm Beach County Circuit Court, at which time, Judge Winnett entered a protective order prohibiting Mr. Hochstadt from taking Mr. Boyd's deposition.

While the expense and wasted time traveling to West Palm Beach was not substantial, the arrogance of Hochstadt and his complete disregard not only for others but

for the law and the rules of civil procedure is alarming. Quite clearly, had Hochstadt completed any legal research, which he is quite capable of given his 15,000 hours of practicing law, he could have confirmed that any information Mr. Boyd possessed was clearly privileged and that a judge was never going to compel an attorney's testimony concerning his investigation of the Cosmex case. Despite this fact, he insisted on dragging not only Mr. Boyd, but two other lawyers to he had subpoenaed the hearing concerning the Conness litigation.

Why Hochstadt attempted to utilize the Conness litigation to depose lawyers he has threatened to sue in the past, including the undersigned, is unclear. However, the point is very simple-unless Hochstadt is severely sanctioned for his conduct, he will never change. At this point, some drastic action must be taken to place a price on Mr. Hochstadt's ability to conduct himself this way and his abuse of the legal system. That price should be substantial, so that a man who lives in a $3,000,000 home and who has a net worth in excess of $17,000,000 and who recently sold two radio stations netting in excess of $4,000,000 feels some pain. Only then will Hochstadt think before harassing another defendant.

### **Hochstadt's Continued Frivolous Actions**

Other than what has been described hereinabove, Hochstadt has continued his campaign of frivolous actions during the latter course of this litigation and the appeal to the Eleventh Circuit Court of Appeals. Hochstadt, in a blatant attempt to alter the outcome of the appeal and the motion for sanctions in this matter, filed a frivolous Motion to Enforce Compliance of Settlement Agreement Terms in the previously closed Iowa litigation.

*Integrated Broadcast Services v. Campbell, et al.*
CASE NO: 98-8522-CIV-SEITZ
Page 12

This was a further attempt, by Hochstadt to harass the Schad and Campbell Defendants and frustrate the goals of a speedy outcome to the dispute. Needless to say, in keeping with his *modus operandi*, Hochstadt filed the motion *pro se*, and duped an Iowa attorney to represent him after the motion was filed.

Despite Hochstadt's actions, the court in Iowa ruled that this Motion was not what it purported to be, but rather:

> The purpose of Hochstadt's motion to enforce settlement is not to enforce any of the ten paragraphs contained in the settlement agreement but rather to interpret the language in the release in such a way as to **influence the Florida courts** in connection with the appeal which is now pending and in connection with the action for sanctions which is also pending in Florida. (emphasis added) (Schad Memorandum Appendix 25).

The Iowa court's clear insight in the motives behind Hochstadt was directly on point. The judge essentially ruled that Hochstadt's motion was a frivolous filing and, if such a proceeding had occurred before this Court, it surely would have been sanctionable. However, this Court may consider such acts in determining the amount of sanctions to impose.

A court of competent jurisdiction has concluded that the acts of Hochstadt were both frivolous and an attempt to influence the results in this litigation. Hochstadt's actions further required Schad and Campbell to, respectively, defend and prepare for the unfounded Motion. These actions by Hochstadt are sanctionable and should be punished severely.

*Integrated Broadcast Services v. Campbell, et al.*
CASE NO: 98-8522-CIV-SEITZ
Page 13

### III. MEMORANDUM OF LAW

The objectives of Rule 11 sanctions are to deter future litigation abuse, punish the offender and compensate the victims of the abuse. Baker v. Alderman, 158 F.3d 516 (11th Cir. 1998); Sussman v. Salem, Saxon and Nielsen, P.A., 150 F.R.D. 209 (M.D. Fla. 1993). Deterrence is the primary goal and is the "touchstone" of Rule 11. Baker, 158 F.3d at 528; Sussman, 150 F.R.D. at 213. See also, Advisory Committee Notes to Rule 11, 97 F.R.D. 198 (1993).

In awarding sanctions, a district court must consider the financial ability of the sanctioned party to pay the sanctions. Baker, *supra*. However, the sanctioned party bears the burden of proof of his inability to pay a Rule 11 sanction. Gaskell v. Weir, 10 F.3d 626 (9th Cir. 1993). In addition, the Court should consider the offending party's past history, experience and the degree of malice or bad faith. Sussman, *supra*. The amount the court awards is determined by using the lodestar approach. Hensley v. Eckerhart, 461 U.S. 424 (1983); Ro-Ro Enterprises, Inc. v. State Farm Fire and Cas. Co., 1996 WL 556928 (S.D. Fla. 1996). This approach requires multiplying the hours expended by a reasonable hourly rate. In re General Plastics Corp., 184 B.R. 1008 (S.D. Fla. 1995).

In the instant case, all of the factors required to be considered compel the Court to severely sanction Hochstadt. Over the last 15-20 years, Hochstadt has demonstrated an unfailing history of bad faith litigiousness. A severe sanction is required to deter Hochstadt from continuing his abuse of defendants and of the legal system. Hochstadt has never indicated any remorse or contrition regarding any of his actions.

*Integrated Broadcast Services v. Campbell, et al.*
CASE NO: 98-8522-CIV-SEITZ
Page 14

In this case, at every turn, Hochstadt was advised that his case was frivolous— that it was barred by the settlement in Iowa, that causation could not be proven and that he lacked any basis to prove the existence of or the amount of his damages— but Hochstadt needlessly continued with the lawsuit. In fact, Hochstadt attempted, in bad faith, to coerce a settlement using threatening tactics, including the filing of his frivolous Florida Bar complaint against the undersigned and attempting to improperly influence this case by filing frivolous motions in the Iowa court.

Additionally, Hochstadt wasted substantial time by utilizing "expert" witnesses who, when deposed, revealed that they had no factual support for any of their proffered conclusions. In deposition, these experts retracted from the positions they took in affidavits filed in opposition to the Motions for Summary Judgment. Again, more delay.

Hochstadt at every turn appeared to engage in business with critical witnesses immediately before their deposition, thereby dangling a carrot in front of significant witnesses. In almost every deposition Hochstadt insisted on asking questions after IBS's lawyer had concluded his examination. His questions were either repetitions, argumentative or nonsensical. The defendants were required to obtain a protective order the day before South Florida was hit by a hurricane concerning a deposition scheduled for that day. Finally, Plaintiff and its counsel would only cooperate in scheduling depositions if the deposition would take place at their office. Both Hochstadt and his prior counsel were intentionally hostile and rude throughout most of the litigation.

Accordingly, CAMPBELL seeks reimbursement of the entire amount of reasonable attorney's fees expended in this action. See, <u>Dictiomatic, Inc. v. United States Fidelity &</u>

Guaranty Co.[5] (sanctions in the amount of defense of the case levied against the plaintiff for bringing a frivolous claim for lost profits); Grander v. McBee, 23 F.3d 120 (5th Cir. 1994)(attorney's fees in defense awarded where suit was wholly frivolous and should not have been brought). Estate of Calloway v. Marvel Entertainment Group, 9 F.3d 237 (2nd Cir. 1993) (sanction of $100,000 was warranted in light of baseless claim and that fact that the sanction was commensurate with egregious nature of the conduct). This sanction should deter Hochstadt from filing such litigation in the future, curb his litigation tactics, and punish him for his conduct in this action.

Hochstadt has the ability to pay the requested sanction. In order to induce Schad to enter into the Agreement which was the subject of this lawsuit, Hochstadt provided a financial statement dated March 31, 1992 that showed he was worth in excess of $17,436,000. (A copy is attached to the Shad Memorandum at Appendix 16). The document showed that Hochstadt's lived in a residence worth $3 million. (Which he readily claims lacks a substantial mortgage.) There is no indication that Hochstadt's financial status has changed. In fact, Hochstadt's personal accountant, Larry Fletcher, stated that Hochstadt recently sold two (2) radio stations for a price in excess of $4 million.

CAMPBELL seeks reimbursement of the reasonable professional fees incurred in this action. Reasonable fees total $262,911.00. (See attached Affidavit of W. Todd Boyd). Although defendants actual fees total $262,911.00, these fees are based upon below market hourly rates of $125-$150 per hour. Although the amount of fees sought is

---

[5] Case No. 93-2123-CIV-PAINE, Consolidated with Case No. 94-1692-CIV-PAINE, United States District Court for the Southern District of Florida, West Palm Beach Division.

significant, the time expended was reasonable and caused by Hochstadt. Moreover, Hochstadt has the ability to pay this amount. This amount is necessary to further deter Hochstadt from continuing his abusive litigation practices. The amount is also warranted in light of the over $70 million in damages which the Plaintiff and Hochstadt sought in this litigation. Unioil, Inc. v. E.F. Hutton & Co., 809 F.2d 548 (9th Cir. 1986).

In Unioil, the district court levied sanctions in the amount of $294,141.10[6] against plaintiff's counsel for instituting a frivolous lawsuit. Unioil, 809 F.2d at 554. On appeal, the sanctioned party argued that the amount was patently unreasonable. Id. at 559. The appellate court disagreed noting that the sanction was not patently unreasonable in light of the "massive liability" the action threaten to impose on the multiple defendants. Id. See also, Hudson v. Moore Business Forms, Inc., 609 F. Supp. 467 (N.D. Cal. 1985) (counterclaim amount of $4 million interposed by sanctioned party a factor in award of attorney's fees and costs for defense of same).

WHEREFORE, CAMPBELL respectfully requests that this Court enter an Order awarding CAMPBELL $262,911.00 in compensatory sanctions against the Plaintiff and Hochstadt.

---

[6]This amount was subject to an off-set by an reimbursement received by defendant pursuant to an expected payment.

KATZ, BARRON, SQUITERO & FAUST, P.A., ATTORNEYS AT LAW, 2699 S. BAYSHORE DRIVE, 7TH FLOOR, MIAMI, FLORIDA 33133-5408

*Integrated Broadcast Services v. Campbell, et al.*
CASE NO: 98-8522-CIV-SEITZ
Page 17

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed to: J. Steven Warner, Esq., 5701 North Pine Island Road, Suite 320, Fort Lauderdale, Florida 33321 and mailed to: David W. Langley, Esq., David W. Langley, P.A., One East Broward Boulevard, Suite 700, Ft. Lauderdale, Florida 33301 and Lawrence Metsch, Esq., Metsch & Metsch, P.A., 1455 NW 14th Street, Miami, Florida 33125 on this 21st day of June, 2001.

KATZ, BARRON, SQUITERO & FAUST, P.A.
Attorneys for the Campbell Defendants
2699 S. Bayshore Drive, 7th Floor
Miami, Florida 33133
(305) 856-2444

By: _____
W. TODD BOYD
FLORIDA BAR NO. 770558
SETH Z. JOSEPH
FLORIDA BAR NO. 0066893

H:\LIB\DOCS\01039066\LIT\BY1675.WPD